UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARY TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| v.  ) | Civil Action No.  12-1943 (ESH) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Mary Turner, on behalf of her grandson B.M., has brought this action against the District of Columbia pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.* ("IDEA").  Plaintiff appeals from an administrative decision that rejected her claim that defendant violated the IDEA by failing to provide B.M. with a free appropriate public education ("FAPE").  Before the Court are the parties' cross-motions for summary judgment.  For the reasons stated herein, the Court will grant in part and deny in part both motions and remand the case to the Hearing Officer for further proceedings.

## BACKGROUND

### I. STATUTORY FRAMEWORK

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To accomplish this goal, the Act requires that for each child identified as eligible for special education, a team composed of the child's parents,

1

teachers, and other education specialists must develop an individualized education program ("IEP") that sets forth, among other things, the child's present levels of academic achievement and performance, measurable annual goals and how progress toward those goals will be measured, and special education and related services to be provided. *Id.* § 1414(d)(1)(A)(i). A parent who disagrees with the IEP or otherwise believes that his or her child has been denied a FAPE is entitled to an impartial due process hearing before a Hearing Officer. *Id.* § 1415(f)(1)(A). A party aggrieved by a Hearing Officer's decision ("HOD") may bring a civil action challenging it. *Id.* § 1415(i)(2)(A).

## II.     FACTUAL BACKGROUND

B.M., a seventeen-year-old boy, has been deemed eligible to receive special education and related services from D.C. Public Schools ("DCPS"). (Complaint, Dec. 3, 2012 [ECF No. 1] ("Compl.") ¶¶ 5, 8.) B.M.'s special education eligibility is based on an Other Health Impairment (OHI) as his primary disability. (Administrative Record, Feb. 13, 2013 [ECF No. 9] ("AR") at 3.) B.M.'s previous IEP, from June 23, 2011, had prescribed, among other things, eleven hours per week of specialized instruction within the general education environment, five hours per week of specialized instruction outside of the general education environment, and sixty minutes per month of career exploration. (*Id.* at 6.) In February 2012, B.M. began attending Roosevelt Senior High School ("Roosevelt") after having previously attended a charter school—Booker T. Washington High School. (Compl. ¶¶ 11-12.)

On May 24, 2012, a meeting was held to renew B.M.'s IEP. (*Id.* ¶ 14.) While there was a special education teacher (Ms. Cooper) at the meeting, she was not B.M.'s teacher. (AR at 7.) Ms. Cooper is instead B.M.'s case manager, and she was found by the Hearing Officer to have "conferred with the student's special education and regular education teachers prior to the IEP


Team meeting." (*Id.*) While Ms. Turner was in attendance for the meeting, she and her attorney refused to participate in the discussion regarding B.M.'s IEP goals without one of B.M.'s current special education teachers. (*Id.* at 8.)

The renewed IEP resulting from the May, 24, 2012 meeting provided for B.M. to receive six and one half hours per week of specialized instruction inside of the general education setting, and six and one half hours per week of specialized instruction outside of the general education setting. (*Id.* at 3.) The IEP also included SAT registration as an aspect of his transition plan. (*Id.* at 8.)

Plaintiff filed a due process complaint on June 25, 2012, alleging that the May 24, 2012 meeting did not fulfill the IDEA's requirements for an IEP meeting. (Compl. ¶ 19.) Specifically, plaintiff alleged that DCPS failed: 1) to convene a complete IEP team by failing to include the student's special education teacher as a team member, 2) to provide the student with an appropriate transition plan, 3) to implement the student's June 23, 2011 IEP, and 4) to provide the student with a placement capable of implementing the June 23, 2011 IEP. (AR at 5.) Plaintiff alleged that the failure to convene a complete IEP team further violated the requirement that a student's IEP be reviewed and revised at least annually. (Compl. ¶¶ 21-22.)

The Hearing Officer concluded that DCPS had failed to convene a complete IEP team, but that this was a procedural violation which did not constitute denial of a FAPE. (AR at 11-12.) Because the failure to convene a complete team was only a procedural violation, the Hearing Officer also found that B.M.'s IEP had been reviewed and revised at least annually. (*Id.*) The Hearing Officer further concluded that the transition plan was appropriate, as it was designed to produce meaningful benefit tailored to B.M.'s goals. (*Id.* at 13-14.)

On the claim of the IEP's implementation, B.M. was enrolled in English, history, Life Skills, and culinary arts, and each of these classes met for ninety minutes per day. (*Id.* at 15.) The Hearing Officer found that Life Skills was taught by a special education teacher, and thus, it fulfilled the June 23, 2011 IEP requirement of specialized education outside the general education environment. (*Id.*) However, during the approximately five-month period between B.M.'s transfer to Roosevelt and the May 24, 2012 IEP meeting, the Hearing Officer found that B.M. had not received his prescribed specialized instruction within the general education environment. (*Id.*) The Hearing Officer determined that the record did not support DCPS' argument that B.M.'s English and history classes were supported by a special education teacher. (*Id.*) The Hearing Officer found that B.M.'s English class was instead supported by a "paraprofessional" and that there was "no indication that the special education teacher assigned to the student's history class was ever present in the classroom." (*Id.*) The Hearing Officer concluded, however, that this was not a "material deviation" so the IEP was sufficient enough to confer educational benefit. (*Id.* at 16.) On this point, the Hearing Officer cited the special education coordinator's testimony "that [B.M.'s] teachers reported that limited support in general education classes is effective for [B.M.]." (*Id.*)

Finally, the Hearing Officer found that the issue of whether DCPS failed to provide an appropriate placement to implement the June 23, 2011 IEP was barred by the doctrine of res judicata. (*Id.* at 4, 199.)

## ANALYSIS

### I.     STANDARD OF REVIEW

Under the IDEA, a party aggrieved by a HOD may bring a civil action to challenge it. 20 U.S.C. § 1415(i)(2)(A). A court "(i) shall receive the records of the administrative

proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] deems appropriate." *Id.* § 1415(i)(2)(C). If neither party introduces additional evidence, a motion for summary judgment acts as a motion for judgment based on the evidence in the record. *Brown ex rel. E.M. v. District of Columbia*, 568 F. Supp. 2d 44, 50 (D.D.C. 2008). The party challenging the administrative decision carries the burden of "persuading the court that the Hearing Officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). A court must give "'due weight'" to the HOD and "may not substitute its own notions of sound educational policy for those of the school authorities." *S.S. v. Howard Rd. Acad.*, 585 F. Supp. 2d 56, 63 (D.D.C. 2008) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)).

However, less deference is to be accorded to the HOD than would be the case in a conventional administrative proceeding. *See Reid*, 401 F.3d at 521. A court is "obligated by the IDEA to ensure that relief set forth in the administrative award was 'appropriate[.]'" *Id.* Thus, a court may not simply "rely on the Hearing Officer's exercise of discretion," for a decision "'without reasoned and specific findings deserves little deference.'" *Id.* (quoting *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991)). Where the administrative record lacks "pertinent findings" and where neither party requested "consideration of additional evidence, the [Court] may determine that the 'appropriate' relief is a remand to the Hearing Officer for further proceedings." *Id.* at 526 (quoting *J.H. ex rel. J.D. v. Henrico Cnty. Sch. Bd.*, 395 F.3d 185, 198 (4th Cir. 2005)).

## II.   ALLEGED ERRORS IN THE HOD

Plaintiff raises a number of challenges to the HOD. The Court will consider each of these claims *seriatim*.

### A.    Proper Constitution of IEP Meeting

The regulations implementing the IDEA require that an IEP team contain "[n]ot less than one special education teacher of the child, or where appropriate, not less than one special education provider of the child."  34 C.F.R. § 300.321(a)(3).  Plaintiff alleges that defendant convened an improperly constituted IEP team because none of B.M.'s special education teachers were in attendance.  (Plaintiff's Motion for Summary Judgment, Mar. 13, 2013 [ECF No. 10] ("Pl.'s Mot.") at 8.)  The Hearing Officer concluded that while this allegation was correct,[1] this was a procedural violation which did not rise to the level of a denial of a FAPE.  (AR at 11-12.)  Procedural violations do not "inexorably lead a court to find a child was denied FAPE," *Schoenbach v. District of Columbia*, 309 F. Supp. 2d. 71, 78 (D.D.C. 2004); instead, a procedural violation only results in a denial of a FAPE if the procedural inadequacy:

> (I) impeded the child's right to a free appropriate public education;
> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).  The Hearing Officer found that although the special education teacher in attendance was not B.M.'s teacher, she was his case manager and had conferred with the student's special education teachers before the meeting.  (*See* AR at 12.)  The Hearing Officer further found that plaintiff did not present evidence that the annual goals set out in the May 2012 IEP were inappropriate, and therefore, the absence of a special education teacher of B.M.'s did not result in a denial of a FAPE.  (*Id.*)

Plaintiff now challenges the Hearing Officer's determination.  She argues that the failure to include a special education teacher of B.M.'s led to two failings; (1) the IEP was

---

[1] While there was a special education specialist in attendance, she was not *B.M.'s* special education teacher.  (*See* AR at 12.)

"substantively deficient because the team lacked required information" and (2) the absence of B.M.'s special education teacher "precluded Ms. Turner from meaningful involvement in the process of developing the IEP." (Pl.'s Mot. at 10.)  As evidence for the first failing, plaintiff cites to the testimony of Ms. Meredith, B.M.'s tutor, to support the claim that the IEP was substantively deficient. (*Id.* at 10-11.)  Specifically, Ms. Meredith testified that B.M. was "not ready" for the goals set forth in his May 24, 2012 IEP for reading and written expression. (*See* AR at 388-90.)  Ms. Meredith further testified that B.M. was "nowhere near" meeting his 2011 goals in reading. (*Id.* at 384.)

The question of the adequacy of an IEP team was addressed in *Anderson v. District of Columbia*, where the IEP team did not include the student's regular or special education teachers, but was still found to be a team which had the required information to produce a substantively sufficient IEP. *Anderson*, 606 F. Supp. 2d 86, 91 (D.D.C. 2009).  The team in *Anderson* was comprised of a placement specialist who had observed the student in the classroom, a speech pathologist, and a special education teacher. *See id.*  In addition, the team had written reports from the student's special education teacher. *See id.*  The Court found that "while the inclusion of [the student's] teachers certainly would have been ideal . . . [the] team did have adequate substitutes, in the form of written progress reports and at least one education specialist who had observed [the student] in the classroom." *Id.*

In the instant case, plaintiff does not contest that there were participants in the IEP meeting who had observed B.M. in the classroom.  The relevant question, therefore, is whether there was, like in *Anderson*, an "adequate substitute" for one of B.M.'s special education teachers.  In the Hearing Officer's view, the presence of B.M.'s general education teacher, combined with the presence of a special education specialist who was the student's case

7

manager, and who had conferred with the student's special education teachers prior to the meeting, was an adequate substitute for one of B.M.'s special education teachers. (AR at 12.) A court must give "'due weight'" to the HOD and "may not substitute its own notions of sound educational policy for those of the school authorities" if the determinations of the Hearing Officer are "reasoned and specific." *S.S.*, 585 F. Supp. 2d at 63-64 (quoting *Bd. of Educ.*, 458 U.S. at 206); *Reid*, 401 F.3d at 521. Because this determination was reasoned and specific, this Court declines to overrule the Hearing Officer's determination.

As to the second alleged failing, the Hearing Officer concluded that "the [plaintiff] had the opportunity to participate in the decision-making process and refused to avail herself of the opportunity." (AR at 12.) Plaintiff cites several cases which stand for the proposition that a "failure to ensure parental involvement constitutes a denial of a FAPE." (Pl.'s Mot. at 11 (citing *A.I. ex rel. Iapalucci v. District of Columbia*, 402 F. Supp. 2d 152, 164 (D.D.C. 2005); *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001)).) But these cases do not speak to the circumstance where a parent *may* participate but *chooses not to*, as was the case here. *See A.I.*, 402 F. Supp. 2d at 166 ("While Plaintiffs may disagree with the end result and may feel that certain evidence was overlooked, they do not argue that they were denied the opportunity to examine relevant records, present complaints, or obtain an independent evaluation of A.I."); *Amanda J.*, 267 F.3d at 893 (holding that the IEP was deficient because the school withheld crucial information from the parent, in contrast to "a situation where the parents exhibited a studied lack of cooperation with ongoing attempts to develop the . . . IEP" (internal quotation and citation omitted)). Unlike these cases, Ms. Turner and her attorney attended the meeting, but they would not discuss B.M.'s goals without one of B.M.'s special education teachers in attendance. (AR at 129, 308.) Ms. Turner was perfectly capable of having her

objection noted, but then participating in the process to produce an IEP that adequately addressed B.M.'s needs.

A party is free to object to a procedure it finds to be inadequate so that the objection may be noted for the record, but this Court has found an outright refusal to participate to be counterproductive. *See, e.g.*, *Blackman v. District of Columbia*, 533 F. Supp. 2d 7, 11 (D.D.C. 2008) ("The special education plaintiffs' bar should not flatly refuse to cooperate with the defendants, either out of frustration, or out of a hope that it will enable their clients to obtain a private placement from this Court . . . ."); *Bridges Pub. Charter Sch. v. Barrie*, 709 F. Supp. 2d 94, 99 (D.D.C. 2010) (holding that in an IEP resolution meeting context, "it is plausible that had the [plaintiff] participated in that discussion, she would have become aware of facts that would have led her to withdraw the entire due process complaint"). For the above reasons, this Court rejects plaintiff's claim that the Hearing Officer was incorrect in finding that the IEP group convened was not able to produce a substantively sufficient IEP or that it denied plaintiff a meaningful opportunity to participate.

Plaintiff also argues that the lack of a special education teacher at the IEP meeting meant that the meeting did not fulfill the requirement that an IEP be reviewed and revised at least annually. (Pl.'s Mot at 13.) Because this Court agrees with the Hearing Officer's determination that the failure to convene a complete team was only a procedural violation, the claim that DCPS failed to review or revise B.M.'s IEP at least annually must also be rejected.

### B. Adequacy of the IEP Transition Plan

Plaintiff alleges that the May 24, 2012 IEP failed to provide an appropriate transition plan for B.M. (Compl. ¶¶ 34-36.) The regulations implementing the IDEA have several requirements for an IEP transition plan:

> Beginning not later than the first IEP to be in effect when the child turns 16, or younger if determined appropriate by the IEP Team, and updated annually, thereafter, the IEP must include--(1) Appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills; and (2) The transition services (including courses of study) needed to assist the child in reaching those goals.

34 C.F.R. § 300.320(b). This transition plan must also be "based on the individual child's needs, taking into account the child's strengths, preferences, and interests." 20 U.S.C. § 1401(34)(B).

Plaintiff argues that the finalized IEP transition plan did not reflect "what the team determined his needs to be." (Plaintiff's Opposition to Defendant's Cross Motion for Summary Judgment and Reply, Apr. 24, 2013 [ECF No. 14] ("Pl.'s Reply") at 7.) In support of this claim, plaintiff cites the IEP meeting notes of plaintiff's representative which stated in relevant part: "Needs to explore other career options for fall back. To add goal for career exploration – to explore career in writing per vocational evaluation recommendations. . . . Needs goal to address SAT preparation." (AR at 146.)

Defendant responds by citing the official minutes from the IEP meeting, which only list SAT registration as a goal tailored to B.M.'s needs. (*Id.* at 138.) Defendant further argues that this claim should be dismissed as moot because DCPS has issued a new IEP which addresses plaintiff's concerns regarding vocational exploration. (Defendant's Opposition to Plaintiffs Motion for Summary Judgment and Cross-Motion, Apr. 10, 2013 [ECF No. 12-1] ("Def.'s Cross-Mot.") at 19.)

On the issue of SAT preparation, the only evidence in the record cited by plaintiff is the notes of plaintiff's representative. The official IEP meeting minutes only state that SAT registration was the goal based on B.M.'s needs, and the Hearing Officer reviewing the IEP and the administrative record confirmed this view. (AR at 8, 138.) Because the plaintiff has not

10

fulfilled their burden of showing, by a preponderance of the evidence, that the IEP team had concluded SAT preparation was necessary to tailor B.M.'s transition plan to his needs, this claim will be rejected. *See Reid*, 401 F.3d at 521.

On the issue of the inadequacy of the vocational exploration included in B.M.'s IEP, this Court lacks jurisdiction over this claim, because it does not constitute a "case" or "controversy." *See* U.S. Const. art. III, § 2*; DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). No case or controversy exists, so that any demands for relief arising therefrom are moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Hence, "[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

Defendant argues that the latest IEP includes an updated transition plan that addresses the plaintiff's concerns regarding B.M.'s vocational exploration. Specifically, the new IEP includes the goals of attending Langston University (where B.M. has already been accepted) and majoring in English there. (Def.'s Cross-Mot. at 19.) The new IEP also includes the goal of researching and investigating the requirements for majoring in English, and researching choices for employment in careers that require a degree in English. (*Id.*) The defendant therefore submits that "the student's [vocational goals] are mooted by the new transition plan[.]" (*Id.*)

Plaintiff does not contest that the latest IEP provides B.M. with an adequate transition plan, but instead, she argues that the new plan "does nothing to address the harm caused by the fact that the Defendant provided an inappropriate IEP for the period of May 2012 until the date

the new IEP was issued." (Pl.'s Reply at 8.) Plaintiff cites *S.S.* as evidence that a court may still provide compensatory education for a past harm. *S.S.*, 585 F. Supp. 2d at 64. While this may be true, plaintiff in this case has failed to provide a sufficient explanation as to the past harm allegedly suffered by B.M.

Plaintiff only argues that "the Student languished for a period of months under an inappropriate transition plan" and is therefore entitled to compensatory education. (Pl.'s Reply at 10.) Plaintiff does not explain how a lack of career exploration, when a student now has goals to explore different careers, led B.M. to "languish." This alleged harm is far different from *S.S.*, where the Court provided compensatory education for the non-moot harm of two missed school-years of special education which had not been adequately provided for. *See S.S.*, 585 F. Supp. 2d at 64. Because this Court can "grant no meaningful relief" as to plaintiff's request for compensatory education, this request is now moot. *See McBryde*, 264 F.3d at 55.

C. **DCPS's Implementation of B.M.'s June 23, 2011 IEP**

Plaintiff argues that defendant's failure to provide any specialized instruction within the general education context during the period between B.M.'s transfer to Roosevelt and the May 2012 IEP meeting constituted a material failure to implement the June 2011 IEP. As explained herein, the Court agrees that the Hearing Officer was incorrect in her determination that this failure did not deny B.M. a FAPE.

While the question of what standard to apply to failure-to-implement claims under the IDEA has not been addressed by the D.C. Circuit, "'the consensus approach to this question among federal courts that have addressed it has been to adopt a standard articulated by the Fifth Circuit'" *S.S.*, 585 F. Supp. 2d at 67 (quoting *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000)). In *Bobby R.*, the court held:

> [T]o prevail on a claim under the IDEA, a party challenging the implementation of an IEP must show more than a de minimis failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP.

200 F.3d at 349; *see also Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007) ("[A] *material* failure to implement an IEP violates the IDEA.  A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and [those] required by the child's IEP.").  Significantly, a plaintiff does not have to prove a resulting harm caused by the failure to implement:

> '[T]he materiality standard *does not require that the child suffer demonstrable educational harm* in order to prevail' on a failure-to-implement claim. *Van Duyn,* 502 F.3d at 822 (emphasis added); *cf. MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 537 n.17 (4th Cir. 2002) (rejecting the argument that parents must show actual developmental regression before their child is entitled to ESY services under the IDEA).

*Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 275 (D.D.C. 2011).  Thus, the Court must only determine whether the special education within the general education context mandated by B.M's 2011 IEP was "substantial or significant" or, in other words, whether DCPS' failure to deliver the ordered services was "material."

In deciding if this failure was material, "[c]ourts . . . have focused on the proportion of services mandated to those actually provided, and the goal and import (as articulated in the IEP) of the *specific service that was withheld*." *Wilson*, 770 F. Supp. 2d at 275 (emphasis added).  In *Savoy v. District of Columbia*, the Court described how the proportionality standard was applied in other cases:

> In some cases, the failure to provide the requisite number of hours of instruction or services provided in the student's IEP has been found to be a material failure to implement.  For example, in *Sumter Cnty. School District 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478 (4th Cir. 2011), the student, who was moderately to severely autistic, received only seven and one half to ten of the fifteen hours of instruction dictated by his IEP.  *Id.* at 481.  The district court concluded that the missing

13

> hours, in combination with the school's failure to utilize the teaching techniques specified in the IEP, amounted to a failure to implement the student's IEP. *Id.* . . . Similarly, the Ninth Circuit in *Van Duyn* found that the school failed to implement the student's IEP by denying him five of the eight to ten hours of math instruction required in the student's IEP. 502 F.3d at 823–24. By contrast, in *Catalan v. District of Columbia*, 478 F. Supp. 2d 73 (D.D.C. 2007), the student's IEP required that the student receive three, forty-five minute sessions of speech therapy per week. The student missed several sessions because of the unavailability of the therapist, and some sessions were terminated early because the student's "fatigue was rendering the therapy unproductive." *Id.* at 76. Judge Henry H. Kennedy found that since the student received consistent speech therapy, the failure to provide all of the required sessions was not a material deviation from the student's IEP. *Id.*

844 F. Supp. 2d 23, 34 (D.D.C. 2012). Relying on these cases, the *Savoy* Court found "[t]he minimal difference in hours provided by [the defendant] and required by [the child's] IEP—less than one hour per week—[made] this case more akin to *Catalan* than *Sumter* or *Van Duyn*." *Id.*

The difference in hours in the instant case is not akin to *Savoy* or *Catalan*. While the Hearing Officer acknowledged that specialized instruction was entirely absent ("the failure of DCPS to provide the specialized instruction within the general education environment . . . did not deny the student a FAPE because the student received educational benefit . . . even *without the specialized instruction*"), she nonetheless found a FAPE. (AR at 16 (emphasis added).) The Hearing Officer's conclusion appears to rely on the view that a FAPE need not provide the "absolutely best" or "potential-maximizing" education. (*Id.* at 13 (quoting *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 433, 439 (9th Cir. 2010) (citation and internal quotation marks omitted)).) But as stated above, it is the proportion of services mandated to those provided that is the crucial measure for purposes of determining whether there has been a material failure to implement. *See Wilson*, 770 F. Supp. 2d at 275. The total lack of special education support within the general education environment is therefore clearly problematic.

Defendant's other arguments are unavailing.  First, B.M. did receive 2.5 more hours per week of specialized instruction outside of general education than had been mandated.  (*See* Def.'s Cross-Mot. at 16.)  But this does not make the fact that B.M. got 11 hours fewer than he was due of special education within general education any less of a material failure.  As plaintiff correctly argues, the IDEA requires "to the maximum extent appropriate, children with disabilities . . . [be] educated with children who are non-disabled."  34 C.F.R. § 300.114.  Providing more hours outside of general education is therefore not an acceptable alternative for supported hours inside the general education environment.

Second, defendant argues that B.M. had the assistance of a "paraprofessional in special education" in his English class.  (Defendant's Reply to Plaintiff's Opposition to Defendant's Cross Motion and Motion for Partial Dismissal, May 8, 2013 [ECF No. 15] ("Def.'s Reply") at 9.)  But the record does not indicate that this paraprofessional had any qualification beyond her B.S. in English, and even assuming arguendo that the paraprofessional was functionally equivalent to a special education assistant (which she was not), this still only accounts for 7.5 of the 11 mandated hours per week of special education in the general education context.  (*See* AR at 211.)  The record also does not indicate that there was any special education assistance in B.M.'s history class.

Third, Plaintiff argues that because B.M. was successful in English (B.M. was earning a "C"), it was not a material failure to implement the required number of hours per week of special education in the general education context.  This argument also does not address the applicable standard, and it ignores the fact that plaintiff need not show an educational harm to prevail.  *Wilson*, 770 F. Supp. 2d at 275.

15

Because of the significant difference between the proportion of special education in the general education context mandated and that which was actually received, the Court concludes that the Hearing Officer was incorrect in her finding that B.M. was not denied a FAPE.

### D.      Application of Res Judicata to Claim of Inability to Implement IEP

Plaintiff argues that the September 11 decision did not concern the appropriateness of placement at Roosevelt. (Pl.'s Reply at 11.) The Court agrees that the Hearing Officer mistakenly referred to the September 11, 2011 decision rather than to the February 3, 2012 decision. (*See* Def.'s Reply at 8.) But this mistake does not mean that plaintiff can prevail, as the February 3, 2012 decision does include a conclusion that "Roosevelt High School could implement Student's IEP." (AR at 114.) Thus, the issue was decided and is therefore barred by res judicata.

The factors that are required for res judicata to apply are: 1) the presence of the same parties or privies in the two suits; 2) claims arising from the same cause of action in both suits; and 3) a final judgment on the merits in the previous suit. *See Friendship Edison v. Suggs*, 562 F. Supp. 2d 141, 148 (D.D.C. 2008); *see also Theodore v. District of Columbia*, 772 F. Supp. 2d 287, 292 (D.D.C. 2011) (applying res judicata in the context of IDEA proceedings). Res judicata bars claims that have already been litigated, if the same cause of action is implicated in the initial and subsequence lawsuits; specifically, the two lawsuits must "share the same nucleus of facts." *Theodore*, 772 F. Supp. 2d at 293.

The parties here are still the District of Columbia and Mary Turner, so the first factor is satisfied. Plaintiff argues that the cause of action is not the same, even if the Hearing Officer mistakenly cited to the September 2011 decision, for according to plaintiff, the February decision related to the appropriateness of the placement "in that it failed to offer groups and minimal

distractions," whereas the instant claim was about the ability to implement B.M.'s IEP." (Pl.'s Reply at 11.)  But the February 3, 2012 decision clearly includes the conclusion that "Roosevelt High School could implement Student's IEP."  (AR at 114, 117-18.)  Therefore, the claim arises from the same cause of action and "share[s] the same nucleus of facts."  Finally, there has been a final judgment on the merits.  So this claim is therefore barred.

### III.   COMPENSATORY EDUCATION AWARD

The IDEA gives courts "broad discretion" to award compensatory education as an "equitable remedy" for students who have been denied a FAPE.  *Reid*, 401 F.3d at 522-23 (quoting *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15-16 (1993)).  The "ultimate award" must "provide the educational benefits that likely would have accrued from special education services" that the school district "should have supplied in the first place."  *Id.* at 524.  A compensatory award must "rely on individualized assessments" after a "fact-specific" inquiry.  *Id.*  "In formulating a new compensatory education award, the hearing officer must determine 'what services [the student] needs to elevate him to the position he would have occupied absent the school district's failures.'"  *Anthony v. District of Columbia*, 463 F. Supp. 2d 37, 44 (D.D.C. 2006) (quoting *Reid*, 401 F.3d at 527).

In *Reid*, the Court of Appeals rejected "mechanical hour-counting," and emphasized that an award must be "*designed to meet* [the student's] *unique needs.*"  *Reid*, 401 F.3d at 524 (quoting 20 U.S.C. § 1400(d)(1)(A)).  Because a Hearing Officer is in the best position to make these calculations, this Court will remand this case for further proceedings to be conducted as expeditiously as possible.  The Hearing Officer should supplement the record with the information needed to "best correct" B.M.'s educational "deficits," *Reid*, 401 F.3d at 526, and to "determine an appropriate award of compensatory education" based on the District's failure to

provide B.M. with a special education in the general education context during the period between B.M's entry to Roosevelt and the May 24, 2012 IEP meeting.  *Brown*, 568 F. Supp. 2d at 54 (holding that plaintiff was entitled to an award, but remanding to the Hearing Officer to gather further evidence because plaintiff miscalculated the relevant time that the student had been denied a FAPE).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment will be granted in part and denied in part, defendant's motion for summary judgment will be granted in part and denied in part, and this matter will be remanded to the Hearing Officer for further proceedings to determine an appropriate award of compensatory education for the denial of a FAPE during the period between B.M.'s transfer to Roosevelt and the May 24, 2012 IEP meeting.  A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  July 2, 2013